(No. 2368—)

CARLIN FRARY GIBBS, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed February 13, 1935.*

AUGUST C. MEYER, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

For some time prior to and on the 15th day of May, A. D. 1933, claimant was acting as assistant in chemistry in the Department of Chemistry in the University of Illinois, pursu-

ant to employment by the Board of Trustees of such University. On the date last mentioned, about nine o'clock p. m., while assembling laboratory apparatus and attaching a rubber tube to a glass arm of a distilling flask in connection with the performing of an experiment with chemicals of various kinds, the glass tube broke and one of the fragments cut the little finger of claimant's left hand, severing a tendon, which retracted, necessitating an operation, and resulting in the permanent loss of part of the use of such little finger.

It seems to have been taken for granted both by claimant and respondent that the respondent was engaged in a hazardous business or enterprise within the meaning of Paragraph seven (7) of Section three (3) of the Workmen's Compensation Act, which provides in substance that the provisions of the Act shall apply automatically to all employers and all their employees engaged in any department of any enterprise wherein molten metal, or explosive or injurious gases or vapors, or inflammable vapors or fluids, or corrosive acids are manufactured, used, generated, stored or conveyed in dangerous quantities.

Although such assumption may be justified by facts within the knowledge of counsel for the respective parties, yet the present state of the record does not justify the same.

The Attorney General takes the position that the accident in question did not arise out of and in the course of claimant's employment, and if he is correct in such contention, it will be decisive of the case, as under such circumstances claimant will not be entitled to an award even though he was engaged in an extra-hazardous enterprise at the time of the accident. We will therefore consider the question raised by the Attorney General.

The question as to when an accident arises out of and in the course of the employment has been considered by our Supreme Court in many cases, and the words "arising out of" and the words "in the course of" now have a fixed and definite meaning. In the case of *Board of Education* vs. *Industrial Commission*, 321 Ill. 23, the court said:

"It was incumbent on the defendants in error to prove that the injury to their husband and father arose 'out of and in the course of' his employment. These words have often been discussed and defined by this court, and it is now well established that the words 'out of' point to the origin of the cause of the accident, and that the words 'in the course of' point to

the time, place and circumstances under which the accident occurred. These words are used conjunctively, and there can be no recovery in this case unless the injury occurred in the course of the employment and also arose out of the employment. The full meaning of this statement is, in substance, that the accident must result from a risk incidental to the employment and while the employee is doing that which he is reasonably required to do within the time of his employment and at the place where he 'may be reasonably expected to be while discharging the duties of his employment. *Dietzen Co.* vs. *Ind. Board,* 279 Ill. 11; *Morris & Co.* vs. *Ind. Com.,* 295 id. 49; *Mueller Construction Co.* vs. *Ind. Board,* 283 Ill. 148; *Vincennes Bridge Co.* vs. *Ind. Com.,* 351 Ill. 449."

In the case of *Edmunds* vs. *Ind. Com.,* 350 Ill. 197, the court said:

"Employees are not in the course of their employment even though they may be in the general area of it, if they are not engaged in the particular duties for which they were employed or some work incidental thereto."

In the case of *Cruzan* vs. *Ind. Com.,* 350 Ill. 407, the court said:

"It is not enough that the injured person may be present at the place of the accident because of his work unless the injury is the result of some risk of the employment. * * * * * * One claiming compensation under the Compensation Act for the death of an employee must prove by direct and positive evidence or by evidence from which the inference can fairly and reasonably be drawn, that death was caused by an accidental injury which occurred not only in the course of the employment of the deceased but also arose out of such employment."

However, it is not always a simple matter to apply the definitions given to the facts in the particular case.

In this case it appears from the evidence that the claimant's position was what is known as a teaching fellowship; that teaching fellows in positions similar to that of the claimant are employed to teach part time in order to make it easier for them to carry on advanced work for which they have shown special aptitude; that an assistant is appointed primarily for his teaching ability, but as a secondary requirement he must be capable of doing competent graduate work toward an advanced degree; that the acceptance agreement between claimant and the Board of Trustees of the University under which claimant was working at the time of the accident in question recites as follows:

"That the Board of Trustees of the University of Illinois has appointed you to the position of assistant in chemistry on one-half time for the second semester of the academic year 1932-33 at a cash compensation of three

hundred dollars ($300) (with exemption from tuition incidental, and laboratory fees in the Graduate School, except matriculation or diploma fees)."

The evidence further shows that no assistant is appointed unless he is an active student for an advanced degree, which in turn requires research work involving laboratory experimentation; that if the claimant were to discontinue his research work or it was to prove unsatisfactory, he would not be retained after the expiration of his existing contract.

Dr. C. S. Marvel, Professor of Chemistry at the University and claimant's research director, was inclined to regard the work being done by the claimant at the time of the accident as part of his duties, while Dr. Roger Adams, head of the Chemistry Department of the University, was inclined to the opposite view.

The evidence shows that claimant's teaching hours were from eight to ten, and ten to twelve m., and from five to six p. m.; that on the date in question he returned to Room 214B in the Chemical Building, about seven-thirty p. m., to do certain research work; that the work upon which he was engaged at the time of the accident in question was in connection with his work for his doctor's thesis; that he received credit toward his graduate degree for such work; that he expects to receive his degree in February, 1935.

Claimant testified that a fair characterization of the arrangement between the Board of Trustees and himself is as follows: That while at the University, registered as a graduate student doing work towards his doctor's degree, the University during the second semester of the academic year 1932-33 employed him for half time at the stated compensation, the other half of the time being his own to do as he saw fit or as might be required of a student doing work towards a doctor's degree.

Although the matter is not entirely free from doubt, we are inclined to the opinion from all the evidence that at the time of the accident the claimant was not engaged in the performance of any of the duties required of him by his contract of employment or in the doing of anything which was incidental to the performance of such duties. He was employed as an instructional assistant to do teaching work, and the graduate work was no part of the work for which he was employed and paid—but he was required by the rules of the Chemical Department to do such research work if he was to

remain in the Graduate School and pursue his studies therein.

The evidence shows that the work upon which the claimant was engaged at the time of the accident was not teaching work, but was his own individual work done for the purpose of obtaining his degree, and incidentally for the purpose of enabling him to remain in the Graduate School, but was not a part of the duties of his employment within the terms of his contract.

We conclude, therefore, that the accident to the claimant did not arise out of and in the course of his employment and award must therefore be denied.

Award denied. Case dismissed.